**SO ORDERED.**

**SIGNED February 13, 2009.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE: ADAMS 3, INC                                         CASE NO. 07-81269

REASONS FOR DECISION

This matter came before the Court on the Chapter 7 Trustee's §506(c) Application to Recover Reasonable, Necessary Costs and Expenses of Preservation of the Estate from the secured creditor, the United States of America, Internal Revenue Service, who filed an opposition to the motion. This is a Core Proceeding pursuant to 28 U.S.C. §157(b)(2)(A). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. This Court makes the following Findings of Fact and Conclusions of Law in accordance with F.R.B.P. 7052. Pursuant to these reasons, the Application to Recover Costs and Expenses under §506(c) **is DENIED**.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The debtor, Adams 3, Inc., filed its Chapter 11 case on December 18, 2007. Debtor was a home health provider, and at the time of filing, the United States of America, Internal Revenue

Service (hereinafter, the "IRS") had in place a significant lien on the receivables of this debtor, including amounts dues from Medicare and services rendered by the debtor to its patients. The IRS asserted secured claims in the total amount of $751,436.20 (attaching to all property, real or personal, in which the Debtor has an interest), unsecured priority claims in the total amount of $282,216.78, and unsecured non-priority claims in the total amount of $101,908.45.

At the beginning of the case, debtor-in-possession sought an order allowing the use of the IRS's cash collateral, to which the IRS objected. Interim and final orders allowing the use of cash collateral were entered, which granted the IRS a replacement lien on all post-petition receivables, as well as adequate protection payments. Meanwhile, debtor-in-possession failed to make adequate protection payments, failed to make payroll tax deposits, failed to pay Unites States Trustee quarterly fees, and the United States Trustee filed a Motion to dismiss or convert the case, which was initially withdrawn, but then refiled and pursued after the debtor filed a Motion to Sell substantially all property of the estate under §363. This proposed sale was initially approved by the Court, but shortly thereafter, the Order approving the sale was denied and the ruling revoked on the discovery that the prospective purchaser was a family member of the principal of the debtor-in-possession, Mr. Dan Adams. Mr. Adams reported that re was not related to the purchaser, when asked that very question by counsel to the IRS at the hearing on the Motion to Sell.

Due to the misrepresentation of the principal to the debtor-in-possession, as well as the significant failures of debtor-in-possession to make required payments and account for the use of the receivables, a Chapter 11 Trustee, Mr. Mark Sutton, was appointed on the United States Trustee's motion on August 6, 2008. The sole asset of the estate being the home health business, the trustee sought to continue the business while re-noticing the Motion to Sell by Auction. An

2

auction was conducted and the Motion to Sell to Patrick Mitchell, with the Order providing that the liens attached to the proceeds, was granted in open court on August 27, 2008, just 21 days after Mr. Sutton was appointed Chapter 11 Trustee. The next day, on August 28, 2008, the trustee filed a Motion to Convert the case to one under Chapter 7, which was granted on September 17, 2008.

After the case was converted to one under Chapter 7, counsel to the former Chapter 11 Trustee filed two motions seeking to ratify payments made to the purchaser from funds that "flowed through" the original account of the debtor-in-possession, but actually belonged to the purchaser and not the estate. (Docs. #138, #158.) Those motions were granted with no objections filed by the IRS. Counsel to the Chapter 11 Trustee also filed Motion to Pay Employees Administrative Accrued Vacation Claims and Signing Bonus Claim pursuant to §503(b)(1)(a) and 11 U.S.C. §507(a)(4). (Doc. #160.) That motion was also granted without objection of the IRS.

Counsel to the Chapter 11 Trustee contemporaneously filed a Motion to Pay Chapter Eleven Administrative Claims, listing fifteen claims as due and payable under §503(b). (Doc. #162.) The IRS filed an objection to that motion, arguing therein that these claims did not fall within the administrative claims authorized by section 503(b), the lien of the IRS could not be effectively subordinated to these fifteen claims, and were further prohibited to be paid by subordinating the tax lien under §724(b). This last argument was buttressed by the following citation to Colliers on Bankruptcy:

> With respect to cases converted from Chapter 11, it has been observed that "Section 724(b), however, precludes distribution of proceeds received from the subordination of a tax lien to chapter 11 administrative expenses other than wages, salaries and commissions." 6 Collier on Bankruptcy, 15th Ed., rev., ¶724.03[8], page 724-16. "The result is that proceeds of the subordination of a tax lien may be used to pay wages, salaries and commission incurred during the chapter 11, but not other chapter 11

3

administrative expenses of equal priority, and to pay section 507(a)(3) to 507(a)(7) priority claims, but not chapter 11 administrative expenses with a higher priority." Ibid, page 724-16 and 724-17.

(Doc. #167.)

The IRS objection was sustained, and the Order denying the Motion to Pay Chapter Eleven Administrative Claims provided the Motion was denied without prejudice to the Trustee re-filing the motion "citing additional grounds." Thereafter, counsel to the Chapter 11 Trustee attempted to obtain court authorization to pay five of these same fifteen claims by filing the motion presently before this court, styled an Application to Recover Reasonable, Necessary Costs and Expenses of Preservation of the Estate from the Secured Creditor, the IRS, specifically couching the request under §506(c). (Doc. #177.) Section 506(c) provides an exception to the rule that secured claims are superior to administrative claims. The claims sought to be paid as a surcharge against the IRS lien are:

1. $3,073.75 for professional services evidenced by a physical therapy invoice submitted by Brad Foster for visits to patients and including his mileage;

2. $700.00 for professional services evidenced by an invoice of Paul Dauzat, a Certified Public Accountant, for the period of July 30, 2008, in preparing a cost report for 2007;

3. $1,689.67 for local telephone services, long distance services and internet services as set forth within a monthly statement of AT&T;

4. $597.35 for utility services provided by the City of Alexandria due after October 14, 2008;

5. $2,115.50 for rent due the Centre for the period from January 30, 2008, to August 1, 2008.

4

Again, the IRS objected, asserting therein that the expenses could not be paid as a surcharge against the IRS lien, but could be paid only from estate funds. In this case, there are no unencumbered estate funds, as the IRS lien attached to all estate property. Now that the case is converted to one under Chapter 7, the IRS argues that these expenses do not fall within the specific "carve-out" of the general distribution scheme of §726 in §724(b) which pertains only to "wages, salaries and commissions" of the employees of the debtor. Further, the IRS argues that the amounts due for professional services to Mr. Foster and Mr. Dauzat should have been approved under §327(a) and §330(a)(1), to be paid pursuant to a Motion and Order of the Court under §503(b)(2).

Considering the original reasons for denying the prior Motion to Pay these expenses as Chapter 11 administrative claims, the instant motion using §506(c) is the creative attempt of the Chapter 11 Trustee to reach same desired result, which is to surcharge such claims against the IRS lien, or as counsel to the IRS states, effectively "subordinate" the IRS lien to these administrative expenses of equal priority in violation of the distribution scheme set forth in §726 and §507, and do not qualify as expenses to be paid outside that scheme under §724(b), because they are not "wages, salaries and commissions" of the employees of the debtor. The Trustee argues that the surcharge against the IRS is permissible as it is the sole beneficiary of the recovery of the property of the estate, which was only obtained by maintaining the home health business for the purpose of selling it during the 21 days prior to its sale to Mr. Mitchell.[1] While the IRS concedes that the expenses may have been reasonable, necessary for the preservation of the asset, namely a sellable business, it urges that

---

[1] The final sales price of the business to Mr. Mitchell was $505,000.00, which was substantially greater than the $125,000.00 bid of the buyer who attempted to purchase the business on the motion to sell by the debtor-in-possession.

5

§506(c) cannot be used to circumvent the distribution scheme set forth in §726 and §507, and cannot be used to surcharge the IRS outside the provisions set forth in §724(b)(2). That position is supported by another court within the Fifth Circuit, which stated: "The Court is not aware of any authority that allows the debtor to essentially bill the secured creditors for a portion of the professional fees incurred. And, at least in the context of the present case, billing the secured creditors for the debtor's fees and expenses is not the same thing as generating funds from the secured creditor's collateral."[2] *In re Consolidated Cotton Gin Co., Inc*., 347 B.R. 572, 576 (N.D.Tex. 7/21/2006).

The next question is: Did the IRS consent to a super-priority lien as to these five expenses in the cash collateral order to which it approved as to form when the case was controlled by the debtor-in-possession? The answer is no. While the cash collateral order provides for the business use of receivables to which the IRS attached, it did not contemplate a super-priority status for all expenses in the Chapter 11 case. Further, adequate protection payments were not made, and the appointment of the Chapter 11 Trustee as well as the conversion of the case to one under Chapter 7, which all militate against the Chapter 11 Trustee's reliance on a pre-appointment, pre-conversion cash collateral order to circumvent the normal distribution scheme.

---

[2]The Chapter 11 Trustee admits in his Motion to Sell that "The principal asset of the debtor is its right or ability to receive funds from Medicare represented by the State of Louisiana, Medicare provider number license number and Medical provider number." (Doc. #105, ¶14.) This is significant because it shows the asset is the medical provider number itself, not the physical location of the office, telephone number, and the services of these particular claimants, without which, the purchaser could still operate the business. Put another way, these general business expenses which could have been carved-out of the proceeds, had the motion and order so provided (as in fact, the original motion to sell by the debtor-in-possession had contemplated a $20,000.00 carve-out for such expenses), do not rise to the level of funds generated solely from the secured creditor's collateral and for this secured creditor's sole benefit. The simple problem in this case is the fact that there are no estate funds from which these administrative claims can be paid, a fact which cannot be overcome against the enormous weight of the IRS priority tax lien by even the most creative attempt.

6

Thus, this Court concludes that the claimants here may not recover through the application of the former Chapter 11 Trustee using §506(c).

## CONCLUSION

Pursuant to these reasons, the Application to Recover Costs and Expenses under §506(c) **is DENIED.** A separate and conforming order will enter this date.

# # #

8